MARTHA MCDOWELL, APPELLANT, v. WASHINGTON FIDELITY NATIONAL. INSURANCE COMPANY, A CORPORATION, RESPONDENT.*—23 S. W. (2d) 1071.

St. Louis Court of Appeals. Opinion filed February 4, 1930.

*Corpus Juris-Cyc References: Accident Insurance, 1CJ, section 362, p. 518, n. 15.

*Charles A. Lich* for appellant.

*Martin Farrow* for respondent.

NIPPER, J.—This is an action brought by plaintiff, who is appellant here, against the defendant insurance company, on two policies of insurance on the life of Horace McDowell. One is a straight life policy and the other an accident policy.

The petition is in two counts. Count No. 1 is to recover under the life policy, and count No. 2 is to recover under the accident policy. The life policy provided that benefits would not be paid for injuries, fatal or otherwise, sustained while or in consequence of violating the law. This policy was for $155. The accident policy provided for the payment of $100 in the event of natural death, and $1,000 in case of accidental death. The accident policy provided that there should be no payment for accidental death resulting from gun shot wounds, or for injuries intentionally inflicted by any other sane or insane person, or while fighting or violating any law, or homicide or attempt thereat.

The evidence shows that the insured was shot and killed by one Blanche Wallace, in the city of Chicago, Illinois, in the month of February, 1927. The evidence as offered on the part of plaintiff discloses that a Mrs. Baker was conducting a rooming house in the city of Chicago, and that the insured went to her rooming house about 7:30 o'clock one evening. After he was there about ten minutes he was followed by Blanche Wallace. Miss Wallace rang the doorbell and some occupant of the rooming house went down the steps to open the door. When she opened the door she was met by Blanche Wallace, who appeared to be intoxicated. This witness then went upstairs and the insured came to the head of the stairs, being told to go down and see who it was that wanted to see him. Miss Wallace either followed insured or met him on the stairway, and some difficulty arose and they began fighting on the steps. They then went outside the house and a few minutes later it was reported that insured was shot, and that Blanche Wallace was held for the shooting. When Miss Wallace saw McDowell she cursed him and told him to come on down, and then there is some evidence that she grabbed him. The evidence would indicate that she shot and killed him in a fit of jealousy. This took place in February, 1927.

In June of the same year, the plaintiff employed Mr. Lich, an attorney in the city of St. Louis, in her effort to recover the amount of these policies. It appears that Mr. Lich was in possession of the life policy, the accident policy being in the possession of the defendant. He immediately advised defendant of this fact and the defendant then advised Mr. Lich that no proofs of death had been furnished, except a brief statement from the coroner to the effect that the deceased was murdered, and that the matter was being held in abeyance pending the outcome of the murder trial, in order to determine what the circumstances were, and the amount that would be due. Mr. Lich was advised in this letter that if the trial had been held and the facts determined the case could be disposed of at an early date. Mr. Lich answered this letter by telling the defendant that upon examining the life policy, the only one he had in his possession, he failed to see where it would make any material difference whether

the insured was murdered or whether he died from natural causes. He informed the defendant that he did not have the accident policy before him but asked for a copy of the same. To this letter the defendant replied on July 5th, asking Mr. Lich to refer to paragraph three of the policy, and see if it set forth the conditions under which indemnity is not payable, as this information would materially assist the defendant in straightening the matter out. Mr. Lich was also advised that they did not have the accident policy, but that it might be in the local office if the beneficiary did not have it. Mr. Lich was also advised in a letter dated July 15th, that no proofs were ever furnished other than a brief statement from the coroner, and as to whether the deceased was violating any law would depend upon the circumstances leading up to the killing; that these facts would undoubtedly be brought out in the trial of the party who did the killing, and that if Mr. Lich had any of the particulars to advise it, as it would like to get the matter disposed of. Mr. Lich then wrote them asking for blank forms upon which to submit proofs of death, which was done. He also asked defendant in this letter if it could not dispense with certain forms as he did not have the evidence in his possession. To this letter defendant replied, asking Mr. Lich if he could not provide it with a copy of the minutes of the coroner's inquest. Mr. Lich advised defendant that he had made several efforts to get possession of a copy of these minutes but could get no response from the coroner of Cook county, Illinois. He also advised defendant that as it was on the ground it could possibly obtain this information easier than he could, and asked that such be done, he offering to pay the expenses. To this letter defendant replied under date of August 22nd, that one of its representatives had looked over the records of the coroner but that these records were not very complete; that they indicated that deceased had struck Blanche Wallace before she shot him; that the district attorney's office had advised that the trial of Blanche Wallace would be held in September, at which time all the facts would be brought out; that if this was satisfactory to Mr. Lich it would undertake to get the evidence and dispose of the claim in accordance with the facts as they were shown at the trial. To this letter Mr. Lich replied the next day, stating that he did not like to hold the case up so long, but if it could be disposed of during September or October he was willing to wait until after the trial, but if the trial should be deferred to a later time he would have to ask that some decision be made by defendant or he would be obliged to institute suit. There was some other correspondence, not important, Mr. Lich insisting all the time that defendant either pay the claim or a suit would have to be instituted.

Blanche Wallace was acquitted at the trial, and defendant advised plaintiff's counsel on November 9, 1927, that they had had

one of their representatives go to the district attorney's office in Chicago to get the facts, which they would have in a few days, and would advise him. Mr. Lich testified as to his expenses in connection with the litigation, and also stated that he had all the way through demanded the aggregate amount of the face of the two policies.

Defendant offered in evidence minutes of the coroner's inquest which showed that deceased came to his death on February 23, 1927, and recommended that Blanche Wallace, colored, he held on a charge of murder. The certificate of death showed that defendant was shot and killed by Blanche Wallace, apparently, in a fit of jealousy. At the conclusion of the evidence the court instructed the jury to find in plaintiff's favor in the sum of $155, with interest at the rate of six per cent on the first count of the petition, and under the second count, a peremptory instruction was given, to find for plaintiff in the sum of $100, with interest at the rate of six per cent.

Plaintiff, in due time and proper manner has appealed from this action of the trial court, and urges as grounds for reversal here the trial court's action in refusing to permit the jury to award plaintiff damages on account of vexatious refusal to pay, and attorney's fees, especially as to the first count of the petition. It is also insisted that defendant waived the provision of the policy exempting it from liability under count two of the petition, because from the evidence introduced, it is disclosed that it claimed exemption only on the ground that deceased may have been violating the law.

The argument of learned counsel for plaintiff, we do not think is sound. It must be remembered that an examination of this record reveals the fact that both these claims were being considered together all the time, and defendant was seeking to get the information and facts as to how the killing actually took place, not for the purpose of determining liability, but for the purpose of determining the extent and amount of the liability.

If deceased came to his death as a result of gunshot wounds, or injuries intentionally inflicted upon him by another person, there would be no liability under the accident policy for the $1000. If he died as a result of injuries sustained while violating the law, there would be no liability under the life policy. Now, in order to determine the amount of the entire claim, whether it was to be $100 or $255, or whether there was to be any liability at all on the life policy, it was important that the defendant should have the information as to whether or not deceased was violating the law at the time he was killed. There was some delay after the verdict of the jury acquitting Blanche Wallace. This verdict might be some indication at least that she was not to blame.

While plaintiff's counsel testified that he was asking for the full amount of each policy all the time, there is nothing in the record to

indicate that he ever requested the payment of any specific amount on either policy, nor is there any evidence that defendant ever offered any specific amount in payment of either policy. As stated above, they were treated as one claim, and the defendant appeared to be very anxious to obtain the facts as to whether or not deceased was violating the law at the time he was shot and killed by Blanche Wallace.

The action of the trial court, we think, was entirely correct, and there is no error in this record authorizing or justifying a reversal of this judgment. The judgment is accordingly affirmed.

*Becker, J.,* concurs; *Haid, P. J.,* absent.